NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT TOMPKINS, on behalf of himself and all other similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>SELIP & STYLIANOU, LLP, RAB PERFORMANCE RECOVERIES, LLC, and JOHN DOES 1-24,<br><br>Defendants. | Civil Action No.: 18-12524 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a Motion to Dismiss the Complaint filed by Defendant RAB Performance Recoveries, LLC ("RAB") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the Alternative for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 9). Plaintiff Robert Tompkins has submitted an Opposition to RAB's Motion, (ECF No. 17), to which RAB has replied, (ECF No. 20). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies RAB's Motion to Dismiss.

I. **BACKGROUND**[1]

This is a putative state-wide class action arising from a debt-collection letter that Plaintiff

---

[1] This background is derived from the Complaint, (ECF No. 1 ("Compl.")), which the Court accepts as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

alleges was sent by Defendants RAB, a debt collection agency, and Selip & Stylianou ("Selip"), RAB's legal counsel, in violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Compl. ¶¶ 2, 7 14). At some time prior to May 2009, Plaintiff incurred a financial obligation to Juniper Bank for personal expenses. (Compl. ¶¶ 21, 24). After Plaintiff defaulted, Juniper Bank assigned Plaintiff's obligation to RAB. (Compl. ¶¶ 29–30). In May of 2009, RAB obtained a default judgment against Plaintiff in New Jersey Superior Court, Monmouth County, Docket No. DC-003649-09. (Compl. ¶ 37).

Nine years later, Plaintiff received a letter dated May 30, 2018 from Selip on behalf of RAB as the judgment creditor. (Compl. ¶ 38; Compl. at 16–18). The letter claimed a balance due of $2,243.47 and contained a notice of application for the execution of Plaintiff's wages. (Compl. ¶¶ 38–43; Compl. at 16–18). The letter neither itemized the amount of the debt by identifying the amount of principal, interest, fees, or other charges owed, nor did the letter inform Plaintiff whether the balance included interest, and if so, the interest rate applied. (Compl. ¶¶ 44–45; Compl. at 16–18). Plaintiff claims that the letter violated the FDCPA because Defendants had not obtained the proper licenses from the New Jersey Department of Banking and Insurance as required by the New Jersey Consumer Finance Licensing Act ("NJCFLA") prior to purchasing Plaintiff's debt, and therefore Defendants lacked the legal ability to collect on the debt. (Compl. ¶¶ 55–67). RAB now moves to dismiss, arguing that Plaintiff fails to state a claim under the FDCPA because RAB was exempt from the NJCFLA licensing requirements that Plaintiff cites. (ECF No. 9 ("Mov. Br.")).

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted).

## III. ANALYSIS

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). When Congress passed the legislation in 1977, it found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* § 1692(a). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709

F.3d 142, 148 (3d Cir. 2013). Accordingly, the Court must "analyze the communication giving rise to the FDCPA claim 'from the perspective of the least sophisticated debtor.'" *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). "[W]hile the least sophisticated debtor standard protects naive consumers, 'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Here, RAB disputes only the fourth prong—that its attempt to collect on the Superior Court judgment against Plaintiff violated the FDCPA. (*See* Mov. Br. at 5).

A person violates the FDCPA if, *inter alia*, the person uses "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Courts in this District have held that a debt collector's failure to obtain a license pursuant to the NJ Consumer Finance Licensing Act can constitute a violation of FDCPA § 1692e(10). *See Latteri v. Mayer*, No. 17-13707, 2018 WL 2317531, at *3 (D.N.J. May 22, 2018) (denying motion to dismiss where the complaint alleged that the defendant "violated the FDCPA when it attempted to collect a debt on behalf of an unlicensed consumer lender"); *Lopez v. Law Offices of Faloni & Assocs., LLC*, No. 16-1117, 2016 WL 4820629, at *5 (D.N.J. Sept. 14, 2016) ("[A] debt collector's representation in a collection complaint that it had the right to collect a debt when, in fact, it lacked the license

4

required to initially purchase the debt, would violate, at minimum, FDCPA section e(10).")); *Veras v. LVNV Funding, LLC*, No. 13-1745, 2014 WL 1050512, at *6 (D.N.J. Mar. 17, 2014) (denying motion to dismiss where the complaint alleged that defendants "attempted to collect [p]laintiff's debt in contravention of the NJCFLA," finding that allegation "sufficient to at least support [plaintiff's] claim under section 1692e(10)").

RAB does not dispute that a debt collector's failure to comply with the NJCFLA's licensing requirements may constitute a violation of the FDCPA. (ECF No. 20 at 9). Rather, RAB argues that it was exempt from those requirements. The NJCFLA provides that "[n]o person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." N.J.S.A. 17:11C–3(a). Plaintiff argues that RAB was subject to the licensing requirements as both a consumer lender as well as a sales finance company. (ECF No. 17 ("Opp. Br.") at 8–12). RAB maintains that it was subject to neither provision. (Mov. Br. at 7–16). Therefore, in order to determine whether Plaintiff adequately alleges that an FDCPA violation occurred, the Court must interpret and apply the underlying state licensing regulations.

### A. Consumer Lender

In general, New Jersey's civil usury law prohibits creditors from charging more than 6% interest for a loan, or more than 16% where a written contract specifies the interest rate. N.J.S.A. 31:1–1. However, a licensed consumer lender under the NJCFLA is not bound by the provisions of the usury law, and may charge interest at a rate "agreed to by the licensee and the borrower." N.J.S.A. 17:11C–32(a). The NJCFLA defines the "consumer loan business" as follows:

> "Consumer loan business" means the business of making loans of money, credit, goods or things in action, which are to be used primarily for personal, family or household purposes, in the amount or value of $50,000 or less *and charging, contracting for, or*

5

> *receiving a greater rate of interest, discount or consideration therefor than the lender would be permitted by law to charge if he were not a licensee hereunder*, except as authorized by this act and without first obtaining a license from the commissioner. Any person directly or indirectly engaging in the business of soliciting or taking applications for such loans of $50,000 or less, or in the business of negotiating or arranging or aiding the borrower or lender in procuring or making such loans of $50,000 or less, **or in the business of buying, discounting or endorsing notes**, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business.

N.J.S.A. 17:11C–2 (emphases added). RAB argues that, pursuant to the italicized text in the first part of the definition of "consumer loan business," so long as a lender charges an interest rate below the usury law's 16% limit, "the lender need not be licensed under the [NJCFLA]." (Mov. Br. at 10). RAB submits that it never charged Plaintiff over 16% interest on the Juniper Bank obligation, so it is therefore exempt from the consumer lender licensing requirements. (Mov. Br. at 11, 42; ECF No. 20 at 3–5).

Plaintiff argues that RAB's licensing violation arises instead from the bolded language in the second part of the definition, since RAB "directly or indirectly engag[es] . . . in the business of buying . . . notes." (Opp. Br. at 8). Courts in this District have invoked this second part of the definition when classifying debt collection practices as falling within the consumer loan business. *See, e.g., Nepomuceno v. Midland Credit Mgmt., Inc.*, No. 14-5719, 2017 WL 2267261, at *9 (D.N.J. May 24, 2017); *Lopez*, 2016 WL 4820629, at *5. This statutory language does not narrow the category of lenders falling under that definition according to the interest rates that they charge. Nor does this section—contrary to RAB's assertion, (*see* ECF No. 20 at 5)—incorporate the phrase, "such loans," which would arguably relate back to loans charging interests rates in excess of the limitations elsewhere provided by law. Indeed, this District has read the NJCFLA consumer lender definition to prohibit unlicensed creditors from "demand[ing] or collect[ing] interest

6

accrued after an account was charged off by the original creditor for any consumer loan"—in other words, prohibiting unlicensed debt assignees from charging interest at all. *Nepomuceno*, 2017 WL 2267261, at *9 (denying summary judgment on FDCPA § 1692e(10) claim where unlicensed debt collector represented "in a collection letter that the owner of a debt is entitled to collect interest on a debt when, in fact, the owner of the debt lacked the license [pursuant to the NFCFLA] *required to charge interest on the debt*") (emphasis added).

RAB's argument that it has not purchased debt since 2012 and that it therefore was not required to be licensed at the time of the May 30, 2018 letter, (*see* Mov. Br. at 16–17), is unavailing, since RAB would have had to acquire the appropriate license before purchasing Plaintiff's debt in order to ensure that its purchase and subsequent collection effort conformed with the NJCFLA. *See Latteri*, 2018 WL 2317531, at *2 (denying motion to dismiss and endorsing plaintiff's argument that a letter on behalf of a debt collector who "lacked the New Jersey licensing authority *to purchase*, enforce or collect debts" violated the FDCPA) (emphasis added); *Veras*, 2014 WL 1050512, at *3, 6 (agreeing with plaintiff that defendant's purchase of plaintiff's debt "without first acquiring the necessary state license to do so" meant that defendant was not the "lawful owner" of the debt, and that therefore defendant's collection efforts violated the FDCPA).

The Court therefore finds that the Complaint states a plausible FDCPA claim based on RAB's failure to obtain a license pursuant to the consumer lender provision of the NJCFLA. The Complaint alleges that RAB "is a consumer lender as defined at N.J.S.A. 17:11C–2" insofar as RAB "is in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amount[s] of $50,000 or less." (Compl. ¶¶ 48–49, 52–54). Plaintiff further alleges that RAB "did not obtain the appropriate license issued by the New Jersey Department of Banking and Insurance" and that therefore "it was prohibited from

attempting to collect on" Plaintiff's obligation. (Compl. ¶ 65). Finally, the Complaint alleges that the letter "would cause the least sophisticated consumer to believe that Defendants had the legal ability to attempt to collect the debt and that Defendants had acquired the appropriate licenses or had otherwise complied with New Jersey regulations." (Compl. ¶ 77). These allegations sufficiently state a claim pursuant to § 1692e(10) of the FDCPA. *See Latteri*, 2018 WL 2317531, at *2–3; *Nepomuceno*, 2017 WL 2267261, at *9; *Veras*, 2014 WL 1050512, at *3–6.

### B. Sales Finance Company

Federal courts "must 'not hesitate[] to decide questions of state law *when necessary for the disposition of a case* brought to [us] for decision.'" *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mut. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 314–15 (3d Cir. 2012) (emphasis added) (quoting *Comm'r of Internal Revenue v. Lewis*, 141 F.2d 221, 225 (3d Cir. 1944)). Because the Court finds that Plaintiff plausibly states a claim under the FDCPA based on his theory that RAB was subject to NJCFLA licensing requirements as a consumer lender, the Court need not wade into superfluous interpretation of state law to determine whether RAB was further subject to the NJCFLA as a sales finance company.

### C. Summary Judgment

RAB urges that, to the extent the Court relies on certain factual statements contained in a declaration from its managing member submitted in support of its Motion, the Court should convert its Motion to Dismiss into a motion for summary judgment. (Mov. Br. at 6 n.1, 41–44). Because the Court does not rely on those factual statements and finds that a motion for summary judgment is premature at this stage, the Court treats RAB's Motion as a motion to dismiss pursuant

to Fed. R. Civ. P. 12(b)(6) only. *See Kolesar v. Home Depot, Inc.*, No. 07-560, 2008 WL 11383262, at *1 nn.1–2 (D.N.J. Apr. 22, 2008) (declining to consider facts submitted by moving party at motion-to-dismiss stage, noting that summary judgment prior to discovery would be premature).

## IV. CONCLUSION

For these reasons, Defendants' Motion is denied. An appropriate Order accompanies this Opinion.

DATED: February __11__, 2019

HON. JOSE L. LINARES
Chief Judge, United States District Court